UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CARL ALVIN WILLIAMS,

    Petitioner,

v.                                                              Case No.:6:08-cv-1412-Orl-31GJK

SECRETARY, DEPARTMENT
 OF CORRECTIONS, et al.,

    Respondents.
_____/

## ORDER

Petitioner initiated this action for habeas corpus relief pursuant to 28 U.S.C. section 2254 (Doc. No. 1). Upon consideration of the petition, the Court ordered Respondents to show cause why the relief sought in the petition should not be granted. Thereafter, Respondents filed a response to the petition for writ of habeas corpus in compliance with this Court's instructions and with the *Rules Governing Section 2254 Cases in the United States District Courts* (Doc. No. 8). Petitioner filed a reply to the response (Doc. No. 16).

Petitioner alleges nine claims for relief in his habeas petition: 1) trial counsel was ineffective for failing to investigate evidence in support of the motion to suppress clothes seized from the jail; 2) trial counsel was ineffective for failing to investigate whether an expert witness should have been presented to counter the DNA evidence introduced by the State; 3) trial counsel was ineffective for failing to argue that the consensual encounter

with law enforcement did not justify a patdown search of Petitioner; 4) the crack pipe and the clothing taken from Petitioner at the jail should have been suppressed; 5) the trial court erred by allowing the introduction of evidence related to the photographic lineup; 6) trial counsel was ineffective for failing to introduce extrinsic evidence of the victim's drug use for impeachment; 7) the clothing taken from Petitioner at the jail should have been suppressed; 8) trial counsel was ineffective for failing to object to the trial court's departure from its role as a neutral arbiter; and 9) the state appellate court did not adhere to "governing rules of law."

I.      *Procedural History*

Petitioner was charged by information with two counts of sexual battery with a deadly weapon or physical force (counts one and two), one count of kidnaping with intent to commit a felony with a weapon (count three), and one count of aggravated battery with a deadly weapon or causing great bodily harm (count four). A jury trial was held, and Petitioner was found guilty as charged. The trial court adjudicated Petitioner guilty of the crimes and sentenced him to life imprisonment as to each of counts one, two, and three and to imprisonment for a term of fifteen years as to count four, with all of the sentences to run consecutively. Petitioner filed a direct appeal with the Florida Fifth District Court of Appeal, which affirmed *per curiam*.

Petitioner next filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850 with the state trial court, which was denied. Petitioner appealed the denial, and the state appellate court affirmed the denial *per curiam*.

## II. Legal Standards

### A. Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Secretary for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005). The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

3

Even if the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable."[1] *Id.*

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

B.  *Standard for Ineffective Assistance of Counsel*

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[2] *Id.* at 687-88. A court must

---

[1] In considering the "unreasonable application" inquiry, the Court must determine "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams*, 529 U.S. at 409. Whether a state court's decision was an unreasonable application of law must be assessed in light of the record before the state court. *Holland v. Jackson*, 542 U.S. 649, 652 (2004) (*per curiam*); *cf. Bell v. Cone*, 535 U.S. 685, 697 n. 4 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).

[2] In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

4

adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*. at 689-90. "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989)

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted). Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

## C.     *Exhaustion and Procedural Default*

One procedural requirement set forth in the AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless the petitioner has exhausted all means of available relief under state law. 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-22 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). Specifically, the AEDPA

5

provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
>
>     (A)    the applicant has exhausted the remedies available in the courts of the State; or
>
>     (B)    (i)    there is an absence of available State corrective process; or
>
>              (ii)    circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

Thus, a federal court must dismiss those claims or portions of claims that have been denied on adequate and independent procedural grounds under state law. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). In addition, a federal habeas court is precluded from considering claims that are not exhausted but would clearly be barred if returned to state court. *Id.* at 735 n.1 (stating that if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for federal habeas purposes regardless of the decision of the last state court to which the petitioner actually presented his claims).

In order to satisfy the exhaustion requirement, a state petitioner must "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (citing *Picard*, 404 U.S. at 275-76) (internal quotation marks omitted).

The petitioner must apprise the state court of the federal constitutional issue, not just the underlying facts of the claim or a similar state law claim. *Snowden v. Singletary*, 135 F.3d 732 (11th Cir. 1998). The United States Supreme Court has observed that "Congress surely meant that exhaustion be serious and meaningful." *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 10 (1992). Furthermore, the Court explained:

> [c]omity concerns dictate that the requirement of exhaustion is not satisfied by the mere statement of a federal claim in state court. Just as the State must afford the petitioner a full and fair hearing on his federal claim, so must the petitioner afford the State a full and fair opportunity to address and resolve the claims on the merits.

*Id.*; *see also Henderson v. Campbell*, 353 F.3d 880, 898 n.25 (11th Cir. 2003) ("Both the legal theory and the facts on which the federal claim rests must be substantially the same for it to be the substantial equivalent of the properly exhausted claim.").

Procedural default will be excused only in two narrow circumstances. First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both "cause" for the default and actual "prejudice" resulting from the default. "To establish 'cause' for procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). To establish "prejudice," a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different. *Henderson*, 353 F.3d at 892 (citations omitted).

The second exception, known as the "fundamental miscarriage of justice," only occurs in an extraordinary case, where a "constitutional violation has probably resulted in

the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998). To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). In addition, "'[t]o be credible,' a claim of actual innocence must be based on [new] reliable evidence not presented at trial." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (quoting *Schlup*, 513 U.S. at 324).

III.   *Analysis*

A.   *Claim One*

Petitioner states that trial counsel was ineffective for failing to investigate evidence in support of the motion to suppress clothes seized from the jail. According to Petitioner, law enforcement officers illegally seized his clothes while he was at the Orange County jail and also violated the jail's policy and procedures in obtaining his clothes. Petitioner contends that counsel did not adequately investigate the jail's policy regarding the seizure of an inmate's property, which would have supported his motion to suppress. This claim was raised in Petitioner's Rule 3.850 motion and was denied.

Prior to trial, Petitioner's counsel filed a motion to suppress certain evidence, including all clothing and personal items taken from Petitioner after his arrest. The trial court held an evidentiary hearing on the motion to suppress, and Petitioner's counsel asked Detective Kevin S. Kraubetz during cross-examination whether he was familiar with the jail's policies and procedures regarding the taking of an inmate's clothing. Detective

Kraubetz responded that he did not know the jail's procedures on this matter. (Appendix C, Transcript of Evidentiary Hearing at 55-56.) Petitioner testified that he had been arrested a few times on misdemeanor charges; that he was familiar with the jail's procedures with regard to taking an inmate's property; and that law enforcement had not followed the jail's procedures with regard to his clothing. *Id*. at 77-78. Petitioner's counsel argued to the trial court that the seizure of Petitioner's clothing was illegal because it was not based on a search warrant and because it was not conducted in accordance with the jail's policies and procedures. *Id*. at 101, 105-06, 117. The trial court subsequently entered a written order denying the motion, finding, in relevant part, that the clothing was properly seized as an inventory search.

It is apparent that Petitioner's counsel adequately addressed the jail's policy and procedures with regard to the seizure of Petitioner's clothing. Petitioner's counsel presented evidence that the jail had procedures in place and that Detective Kraubetz did not follow those procedures and was, in fact, unfamiliar with those procedures. Further, Petitioner's counsel vehemently argued that the seizure was illegal because those procedures were not followed.

Petitioner has not shown that counsel acted deficiently with regard to this matter or that he sustained prejudice. Accordingly, Petitioner has not demonstrated that the state court's decision was either "contrary to" or an "unreasonable application of" clearly established federal law (*Strickland);* nor has he shown that the state court made an unreasonable determination of the facts in light of the evidence presented.

9

B.   *Claim Two*

Petitioner claims that trial counsel was ineffective for failing to investigate whether an expert witness should have been presented to counter the DNA evidence introduced by the State. The DNA evidence at issue involved a blood spot found on Petitioner's clothing that matched the victim's blood. This claim was raised in Petitioner's Rule 3.850 motion and was denied as "unsupported and speculative."

In general, the decision whether to hire an expert is the type of strategic choice by counsel that may not be second-guessed on habeas corpus review. *Murden v. Artuz,* 253 F. Supp. 2d 376, 389 (E.D.N.Y. 2001). Petitioner's argument that defense counsel would have been able to prove that the DNA evidence had been contaminated, improperly handled, or subject to an unreliable testing procedure if he had only hired an expert is based on nothing more than speculation. Petitioner has not come forward with affidavits or other admissible evidence showing that there is an expert witness who would have testified that the DNA evidence was not credible or inadmissible. Thus, the decision of trial counsel not to call an expert "cannot be considered objectively unreasonable" since Petitioner has only presented his vague hope that another expert might have reached a different result than the State's expert.

Further, there has been no showing of prejudice. Petitioner has failed to come forward with any evidence that could have created a reasonable doubt as to whether the blood spot found on his clothing belonged to the victim. Under the circumstances, since Petitioner cannot demonstrate that trial counsel's failure to call a DNA expert was an

unreasonable strategic decision or that he was prejudiced by counsel's decision, this claim is denied.

C.     *Claim Three*

Petitioner states that trial counsel was ineffective for failing to argue that the consensual encounter with law enforcement did not justify a putdown search of Petitioner. This claim was raised in Petitioner's Rule 3.850 motion and was denied on the basis that there had been no showing of deficient performance or prejudice.

At the hearing on Petitioner's motion to suppress, Deputy Loren Appleby testified that he approached Petitioner on the street and asked if he "could talk to him." (Appendix C, Transcript of Evidentiary Hearing at 10.) Petitioner replied, "Sure. What's up?" *Id*. Deputy Appleby then asked Petitioner if had any weapons or guns in his possession, and Petitioner stated that he had a box cutter in his pocket. *Id*. at 11. Deputy Appleby informed Petitioner that he needed to retrieve the item, and he proceeded to do so. *Id*. at 12. Petitioner was then placed under arrest for carrying a concealed weapon. *Id*.

Petitioner, on the other hand, testified that the deputy approached him, told him to put his hands behind his back, handcuffed him, and then asked him if he was in possession of any weapons. *Id*. at 67-68. Petitioner responded that he had a box cutter in his pocket, and the deputy then removed the item from his pocket. *Id*. at 73. The trial court, in denying the motion to suppress, found that the encounter between Petitioner and Deputy Appleby was consensual and that Petitioner consented to a search of his person. (Appendix B at 114.) The trial court found the testimony of the deputy more credible on

11

the matter.

The record reflects that Petitioner's counsel actually did argue at the suppression hearing that the encounter was not consensual: "Whether he had him put his hands on his head . . . behind his back and held by the wrist, it was not a . . . consent encounter." (Appendix C, Transcript of Motion to Suppress Hearing at 99.) Morever, based on Deputy Appleby's version of the events, which the trial court found more credible, there was a specific, substantiated suspicion that Petitioner was armed, which formed the basis for the search. Consequently, Petitioner has not shown that counsel acted deficiently or that he sustained prejudice. Under the circumstances, Petitioner has not demonstrated that the state court's decision was either "contrary to" or an "unreasonable application of" federal law, or that the state court made an unreasonable determination of the facts in light of the evidence presented.

### D.   *Claims Four and Five*

Petitioner argues in claim four that the crack pipe and the clothing taken from Petitioner at the jail should have been suppressed and in claim five that the trial court erred by allowing the introduction of evidence related to the photographic lineup. These claims were raised on direct appeal.

Although Petitioner raised these claims on direct appeal, he did not present them in terms of a deprivation of a federal constitutional right. As discussed above, the exhaustion of state remedies requires that Petitioner fairly present federal claims to the state court in order to give that court the opportunity to pass upon and correct alleged

violations of a prisoners' federal rights.  *Duncan*, 513 U.S. at 365.  Hence, "[i]f state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution."  *Id.* at 365-66; *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (holding that "the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim."); *Snowden*, 135 F.3d at 735 (holding that "to exhaust state remedies fully the petitioner must make the state court aware that the claims asserted present federal constitutional issues.").

In the present case, Petitioner only apprised the state courts that claims four and five involved violations of state law.  Petitioner made no reference to any federal constitutional issues.  *See Ziegler v. Crosby*, 345 F.3d 1300, 1307 (11th Cir. 2003) (finding that the petitioner's federal habeas claims were not raised in the state court when the direct appeal made no reference to the federal constitutional issues raised in the federal habeas petition).  Petitioner did not alert the state courts to the fact that he was asserting claims under the United States Constitution.  "[O]nly claims that were raised as federal constitutional issues before the state courts have been exhausted in the state courts."  *Snowden*, 135 F.3d at 736 n.4.  Thus, these claims are unexhausted.

Moreover, since Petitioner would be precluded from now raising these claims in the state courts, they are procedurally defaulted.  Petitioner has not shown either cause or prejudice that would excuse the default.  Likewise, Petitioner has neither alleged nor

13

shown the applicability of the actually innocent exception. Since Petitioner is unable to satisfy either of the exceptions to the procedural default bar, claims four and five are denied.

*E.     Claim Six*

Petitioner claims that trial counsel was ineffective for failing to introduce extrinsic evidence of the victim's drug use for impeachment. Petitioner states that this evidence would have "undercut the victim's credibility as a witness by showing her dishonesty" and would have "called into question the victim's ability to perceive and recall the events about which she testified at trial." This claim was raised in Petitioner's Rule 3.850 motion and was denied because Petitioner had not shown prejudice.

At trial, the victim testified as to the crimes committed against her, and she identified Petitioner as the perpetrator of those crimes. (Appendix D, Transcript of Trial at 87.) During cross-examination, Petitioner's counsel questioned her as to how clearly she was able to think on the night that the crimes were committed, and, although she stated "very clearly," she admitted that she was depressed because she had been unable to see her boyfriend; that she had been previously arrested due to an incident with her boyfriend; and that she had consumed six beers earlier that day. *Id*. at 90-95. Petitioner's counsel asked the victim whether she used cocaine on that day, and she replied, "Not at all." *Id*. at 95. He then asked her why cocaine was found in her system, which was reflected in a lab report; she responded that no cocaine was found in her system that day. *Id*. at 95-96.

Thus, Petitioner's counsel did impeach the victim's credibility and also, through his

14

questioning of the victim, informed the jury that cocaine was found in her system. The Court finds that Petitioner has not shown prejudice with regard to this matter. Under the circumstances, Petitioner has not demonstrated that the state court's decision was either "contrary to" or an "unreasonable application of" federal law *(Strickland)* or that the state court made an unreasonable determination of the facts in light of the evidence presented.

F.   *Claim Seven*

Petitioner argues that the clothing taken from him at the jail should have been suppressed. This claim was raised on direct appeal and was presented in terms of a Fourth Amendment violation.

In *Stone v. Powell*, 428 U.S. 465 (1976), the Supreme Court established a general rule that criminal defendants may not seek collateral review of Fourth Amendment exclusionary rule claims under section 2254. The Supreme Court declared that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id.* at 481. The Supreme Court based its decision on a concern for judicial economy, stating that the "justification [for the exclusionary rule] becomes minimal where . . . a prisoner . . . previously has been afforded the opportunity for full and fair consideration of his search-and-seizure claim at trial and on direct review. " *Id.* at 486.

In the instant case, *Stone* clearly prevents Petitioner from directly presenting this claim. The record in this case indicates beyond question that Petitioner received a full and

fair hearing in the state trial court on his claim. The Court determines that Petitioner was afforded a full and fair opportunity to litigate and have this claim adjudicated in the state courts, and he should not be permitted to further relitigate the same issue here. *See Harris v. Dugger*, 874 F.2d 756, 761 (11th Cir. 1989).

The Court further notes that Petitioner does not contend that he was denied the opportunity to present facts to the trial court or to argue the claim before an appellate court, and, in fact, he did both. Therefore, this claim must fail.

In addition, this claim is precluded by section 2254(d). It was considered by the state appellate court, *see Wright v. Moore*, 278 F.3d 1245 (11th Cir. 2002) (holding that a state court's rejection of a claim without any discussion, or issuance of an opinion, does not preclude determination that claim was adjudicated on the merits, so that state court's determination will be entitled to deference for purposes of federal habeas corpus review pursuant to AEDPA), and Petitioner has not shown that the state appellate court applied a rule that contradicted the governing law set forth in the cases of the United States Supreme Court. Furthermore, there is no indication that the result reached by the state appellate court was at odds with any United States Supreme Court case which considered "materially indistinguishable facts." Finally, Petitioner has not demonstrated that the state appellate court's application of the clearly established law regarding this claim was objectively unreasonable.[3]

---

[3] To the extent that Petitioner may have raised a Fourth Amendment violation argument as to claims four and five, they are denied on the same basis as discussed with regard to claim seven.

*G.    Claim Eight*

Petitioner argues that trial counsel was ineffective for failing to object to the trial court's departure from its role as a neutral arbiter. He alleges that the trial judge's questioning of the victim during voir dire concerning her previous sexual assault constituted a departure from his obligation to act as an impartial arbiter. This claim was raised in Petitioner's Rule 3.850 motion and was denied on the basis that counsel did not act deficiently.

Based on certain testimony of the victim during cross-examination, Petitioner's counsel argued at a bench conference that he should be able to question the victim concerning sexual abuse she suffered during her childhood. (Appendix D, Transcript of Trial at 110.) The jury and the victim were then removed from the courtroom, and there was further argument presented on the matter. *Id*. at 110-13. The victim was then questioned out of the presence of the jury by Petitioner's counsel and by the trial court. According to Petitioner, the trial court improperly asked the victim questions and elicited testimony favorable to the State.

The trial court's questions merely sought clarification regarding whether the sexual abuse she suffered as a child was similar to the crimes committed upon her by Petitioner. *Id*. at 114. The jury was not present during the questioning, and there was no indication of bias or prejudice by the trial court. Hence, Petitioner's counsel was not deficient for failing to raise an objection, and there has been no showing of prejudice. Under the circumstances, Petitioner has not demonstrated that the state court's decision was either

17

"contrary to" or an "unreasonable application of" federal law or that the state court made an unreasonable determination of the facts in light of the evidence presented.

## H.     Claim Nine

Petitioner contends that the state appellate court did not adhere to "governing rules of law" in denying the motion for rehearing that he filed with regard to the *per curiam* affirmance of the order denying his Rule 3.850 motion.

It is clear that this claim is not properly reviewable in a federal habeas proceeding. "A habeas petition must allege the petitioner's detention violates the constitution, a federal statute, or a treaty. . . . [A] petition alleging errors in the state post-conviction review process is not addressable through habeas corpus proceedings." *Franzen v. Brinkman*, 877 F.2d 26 (9th Cir. 1989). In *Spradley v. Dugger*, 825 F.2d 1566 (11th Cir. 1987), the petitioner argued that the state trial court violated his due process rights when it denied his Rule 3.850 motion because it did not conduct an evidentiary hearing and because its opinion denying relief failed to attach those portions of the record on which it relied. The Eleventh Circuit Court of Appeals held that the state trial court's alleged errors in the Rule 3.850 proceedings did not undermine the validity of the petitioner's conviction; therefore, the claim went to issues unrelated to the cause of the petitioner's detention, and it did not state a basis for habeas relief. *Id.* at 1567. In this claim, Petitioner alleges errors in the state postconviction review process which are not addressable through habeas corpus proceedings; consequently, it is denied.

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1. The Petition for Writ of Habeas Corpus (Doc. No. 1) filed by Carl Alvin Williams is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

2. The Clerk of the Court shall enter judgment accordingly and is directed to close this case.

3. This Court should grant an application for certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Petitioner has failed to make a substantial showing of the denial of a constitutional right.[4] Accordingly, a Certificate of Appealability is **DENIED** in this case.

**DONE AND ORDERED** in Chambers in Orlando, Florida, this 31st day of March, 2010.

Copies to:
sa 3/31
Counsel of Record
Carl Alvin Williams

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

---

[4]Pursuant to Rule 11 of the *Rules Governing Section 2254 Cases In the United States District Courts*,

> The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue. If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2). If the court denies a certificate, a party may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22. A motion to reconsider a denial does not extend the time to appeal.